UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LARRY D. KNOX,

               Petitioner,

      v.                                 Case No. 03-cv-4026-JPG

UNITED STATES OF AMERICA,

               Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Larry D. Knox's ("Knox") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) and an amendment to that motion (Doc. 3). The government responded to the motion and the amendment (Doc. 13), and Knox replied to that response (Doc. 14). In the wake of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the Court allowed Knox to amend his petition a second time (Doc. 15). The government responded to the amendment (Docs. 17 & 28), and Knox replied to those responses (Docs. 19 & 29). Knox has also made a motion asking the Court to allow him to file an additional reply (Doc. 30). The Court will grant the motion (Doc. 30) and will consider the substance of the motion and the additional reply (Docs. 30 & 31) in considering this § 2255 motion. The Court also considers numerous other motions filed by Knox in this proceeding (Docs. 8, 12, 18, 20, 22, 23, 26 & 27).

## I.    Background

In December 2000, Knox was indicted on three counts of distributing crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The first count was alleged to have occurred on November 12, 2000, and the second and third counts were alleged to have occurred on November 14, 2000. Represented by Eugene O. Howard ("Howard"), Knox pled guilty

without a plea agreement to all three counts in February 2001.  The plea hearing did not technically comply with the requirements of Federal Rule of Criminal Procedure 11.

The presentence investigation report ("PSR") prepared for Knox indicated that his relevant conduct was 396.9 grams of crack cocaine.  The Court allowed Howard to withdraw as Knox's counsel and replaced him with James Stern ("Stern").  Stern filed written objections to the PSR arguing, among other things, that the calculation of relevant conduct and the imposition of an enhancement for possession of a dangerous weapon were not based on reliable evidence.

On July 27, 2001, the Court held a sentencing hearing at which Knox was represented by Stern.[1]  At sentencing, the government presented two witnesses:  Mary Sue Plumlee ("Plumlee") and Uvon Taborn ("Taborn").  Plumlee testified about Knox's drug activities, including specifically two trips she made with Knox and Tinamarie Lawler ("Lawler") in early 1999 to Chicago so that Knox could purchase crack cocaine.  She also testified that Knox admitted to using a gun to frighten people who had stolen Knox's drugs from Plumlee and gave her a firearm to protect herself from future robberies when she was selling his drugs.  In his cross-examination of Plumlee, Stern highlighted her incentives to testify favorably for the government, her inability to remember certain details of the trips to Chicago, the conflicts between her testimony and Lawler's statements regarding one of the trips to Chicago, and Plumlee's drug and alcohol use. He argued to the Court that these factors rendered her testimony incredible and unreliable. Neither the government nor Stern called Lawler to testify.

---

[1]Knox's sentencing occurred before the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005).  The impact of those decisions on Knox's case is discussed later in this order.

2

Taborn testified that in the spring or summer of 2000 he believed his girlfriend had stolen his son's gun.  He further testified that Knox admitted the girlfriend gave the gun to him in exchange for crack cocaine and that Knox sold the gun back to him after he had confronted Knox about it.  On cross-examination, Stern challenged Taborn's memory and highlighted his incentives to testify favorably for the government, a prior inconsistent statement and his lack of first-hand knowledge about an exchange of the gun for crack cocaine.  He also argued to the Court that for these reasons Taborn was not credible or reliable.  Stern called no witnesses at the sentencing hearing.

Despite Stern's objections to the PSR, cross-examination and argument, the Court found Plumlee and Taborn credible.  The Court gave Knox the benefit of Plumlee's and Lawler's contradictory statements about the amount of crack cocaine Knox purchased on a February 1999 trip to Chicago and held Knox accountable for the lower of the amounts contained in the contradictory statements.  The Court further noted that Lawler's statement alone would have placed Knox's relevant conduct between 150 and 500 grams of crack cocaine.

Based on Plumlee's testimony about the second 1999 Chicago trip (226.8 grams) and Lawler's statement regarding a 1998 Chicago trip (56.7 grams) and the February 1999 Chicago trip (113.4 grams), the Court found by a preponderance of the evidence that Knox's relevant conduct was between 150 and 500 grams of crack cocaine (396.9 grams, to be specific)**,** which under United States Sentencing Guideline[2] ("U.S.S.G.") § 2D1.1 yielded a base offense level of 34.  The Court also found by a preponderance of the evidence based on Taborn's testimony that Knox had possessed a dangerous weapon such that his offense level should be increased by 2

_____

[2]Unless otherwise noted, the references to the guidelines in this order are to the 2000 United States Sentencing Guidelines Manual.

points under U.S.S.G. § 2D1.1(b)(1), but also that he had accepted responsibility for his crimes such that his offense level should be decreased by 3 points under U.S.S.G. § 3E1.1(a) & (b), yielding a total offense level of 33.  The Court further found that Knox's criminal history category was VI.  The sentencing range for an offense level of 33 and a criminal history category of VI is 235 to 293 months in prison, but the 20-year statutory maximum sentence under 21 U.S.C. § 841(b)(1)(C) rendered an effective range of 235 to 240 months for each count in Knox's case.  The Court sentenced Knox to serve 240 months in prison, the statutory maximum, on each count to be served concurrently.  The Court also imposed a $1,500 fine and a mandatory $300 special assessment.

Knox appealed to the Seventh Circuit Court of Appeals, where Stern filed an *Anders* brief seeking to be allowed to withdraw as counsel.  The Court of Appeals granted Stern's motion to withdraw and dismissed Knox's appeal as frivolous on April 29, 2002.  *United States v. Knox*, 287 F.3d 667 (7th Cir. 2002).  In its decision, it noted the plea hearing's Rule 11 deficiencies but held that the error was essentially harmless since there was no indication that Knox wished to withdraw his guilty plea.  *Id.* at 671-72.  The Court of Appeals issued the mandate on June 6, 2002.  Knox did not petition the United States Supreme Court for a writ of *certiorari*.

Knox filed this timely § 2255 motion on February 10, 2003.  In it, Knox asks the Court to vacate his conviction and sentence on two general grounds:  (1) that his counsel provided constitutionally ineffective assistance in a variety of instances in violation of his Sixth Amendment right to counsel and (2) that the prosecutor's misconduct violated his Fifth Amendment due process rights.  In his July 24, 2003, amendment, Knox supplements the arguments contained in his original petition, and in his second amendment, filed July 15, 2004,

4

advances an additional ineffective assistance of counsel argument and a direct challenge to his sentence based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 124 S. Ct. 2531 (2004).[3]

In response to Knox's ineffective assistance of counsel arguments, the government argues that Stern was not constitutionally ineffective. It further denies that Knox has sufficiently alleged a *prima facie* case of prosecutorial misconduct. With respect to Knox's direct *Blakely* challenge, the government argues that Knox has procedurally defaulted on the argument and, in the alternative, that *Blakely* is not retroactively applicable to cases on collateral review.

## II.    § 2255 Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Relief under § 2255 is available only if an error is "constitutional, jurisdictional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)

---

[3]While this order was in draft, the Supreme Court decided *Mayle v. Felix*, 2005 WL 1469153 (June 23, 2005), which held that an amendment to a *habeas corpus* petition does not relate back to the original motion "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at *4; *see* Fed. R. Civ. P. 15(c)(2). There is no reason not to apply *Felix* to § 2255 motions as well as *habeas* petitions.

In this case, Knox filed his original § 2255 motion and his first amendment within one year of the date on which his judgment of conviction became final, so they are timely. *See* 28 U.S.C. § 2255 ¶ 6(1). He filed his second amendment beyond the one-year deadline. However, the Court notes that the second amendment complains of the same "common core of operative facts," *Felix*, 2005 WL 1469153 at *12, that Knox sets forth in his earlier filings, namely, the use of amounts beyond the crack cocaine amounts to which Knox admitted in his guilty plea to determine his relevant conduct. For this reason, the Court finds that the arguments in Knox's second amendment are not time-barred.

(quotations omitted).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A § 2255 motion does not substitute for a direct appeal.  A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice.  *Massaro v. United States*, 538 U.S. 500, 504 (2003);  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977);  *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000);  *Prewitt*, 83 F.3d at 816

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum.  They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding.  *Massaro*, 538 U.S. at 504-05;  *Fountain*, 211 F.3d 433-34.  In addition, the district court before which the original criminal trial occurred is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and the potential prejudice that stemmed from that performance.  *Massaro*,  538 U.S. at 504-05.[4]

---

[4]The Seventh Circuit used to adhere to the position that where the claimed instances of ineffective assistance of counsel are clearly and completely reflected within the district court record and none of those instances turn on events outside the record and where the defendant had new counsel on appeal that could have vigorously argued trial counsel's ineffectiveness, there is no fundamental miscarriage of justice, and the defendant must show cause and prejudice before he is allowed to raise the issue in a § 2255 motion.  *See McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996).  The Supreme Court rejected this position in *Massaro* and held that ineffective assistance of counsel may, but is not required to, be raised for the first time in a § 2255 motion even if the alleged conduct is fully reflected in the record and the defendant had new counsel on appeal.  *Massaro*, 538 U.S. at 504.

III.    **Analysis**

The Court finds that Knox has not presented any evidence or argument meriting either a

hearing or relief under § 2255.  As noted earlier in this order, Knox asks the Court to vacate his

conviction on three general grounds:  (1) ineffective assistance of counsel, (2) prosecutorial

misconduct and (3) *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*,

124 S. Ct. 2531 (2004).  The Court will address each ground separately.

A.      Ineffective Assistance of Counsel

Knox has not alleged any instance of constitutionally ineffective assistance of counsel,

either separately or in combination.  The Sixth Amendment to the Constitution states, in

pertinent part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the

Assistance of Counsel for his defence."  U.S. Const. amend. VI.  This right to assistance of

counsel encompasses the right to *effective* assistance of counsel.  *McMann v. Richardson*, 397

U.S. 759, 771, n. 14 (1970).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that

his counsel's performance fell below objective standards for reasonably effective representation

and (2) that this deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 688-

94 (1984);  *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).  The plaintiff's burden

is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable

judgment and declining to second guess strategic choices."  *United States v. Shukri*, 207 F.3d

412, 418 (7th Cir. 2000) (quotations omitted).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to

specific acts or omissions of his counsel.  *Fountain*, 211 F.3d at 434 (citing *United States v.

Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)).  The Court must then consider whether in light of all

7

of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990). To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434.

As a preliminary matter, the Court rejects Knox's argument that his claims of ineffective assistance of counsel must be evaluated not under the *Strickland* standard but under the standard set forth in *United States v. Cronic*, 466 U.S. 648 (1984). He argues that the *Cronic* standard is appropriate because Stern's performance utterly failed to subject the prosecution's case to meaningful adversarial testing. *Cronic* held that in some cases circumstances are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. In such cases, prejudice will be presumed. Such a situation occurs, for example, "'(1) where the accused is 'denied the presence of counsel at a critical stage' in proceedings, (2) where counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing' or (3) where 'counsel is called upon to render assistance under circumstances where competent counsel very likely could not.'" *Barrow v. Uchtman*, 398 F.3d 597, 604 n. 4 (7th Cir. 2005) (quoting *Bell v. Cone*, 535 U.S. 685, 695-96 (2002)) (emphasis omitted).

The Court has reviewed the proceedings in Knox's criminal case and has found that the circumstances were not so likely to have prejudiced Knox's case that prejudice can be presumed. Stern was present at the sentencing, objected to portions of the PSR, cross-examined the government's witnesses, made adequate if not convincing arguments to the Court, and pursued

8

Knox's appeal to its conclusion.  In addition there is no indication that the circumstances surrounding Stern's representation were such that even undeniably competent counsel could not have rendered effective assistance.  For these reasons, *Cronic* does not provide the appropriate standard, and the Court will examine Knox's ineffective assistance of counsel claims using the *Strickland* test.

> 1.    Relevant Conduct Determination

The majority of Knox's allegations of Stern's ineffective assistance relate to the determination of his relevant conduct at sentencing.  The Court will examine each alleged instance of ineffective assistance separately, then cumulatively.

> a.    "Remote" Drug Activities

Knox argues that Stern was constitutionally ineffective because he failed to object to the inclusion as relevant conduct of drug amounts from Knox's two trips to Chicago in early 1999. He argues that these amounts were too remote in time, occurring nearly two years before the offenses of conviction, to constitute relevant conduct in this case.  He also notes that the February 1999 drug purchases involved different participants and different circumstances than the November 2000 sales to confidential sources for which he was convicted.  Knox believes that he should have been sentenced based on a relevant conduct of 2.3 grams of crack cocaine, the amount involved in the transactions to which he pled guilty.  In a supplemental reply brief, Knox argues that a sentence based on 2.3 grams is not even warranted since the facts admitted in his plea support only trace amounts of crack cocaine.

The government argues that Knox's drug activities which were reflected in the PSR stretched from August 1998 to his arrest in November 2000 and evinced a continuing pattern of dealing crack cocaine.  Thus, the activities were a part of the same course of conduct.  The

government also argues that Stern's decision to focus on the argument that Plumlee was unreliable instead of trying to make the "course of conduct" argument was a reasonable strategic decision.

The Court finds that Stern was not deficient for choosing not to pursue the "course of conduct" argument at sentencing because that argument had no chance of succeeding and risked exposing Knox to a substantially higher sentence.  Defense counsel is not deficient for failing to make a frivolous argument.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005).  In determining a defendant's relevant conduct, "the sentencing court must consider types and quantities of drugs not specified in the counts of conviction but that were part of the same course of conduct or common scheme or plan as the convicted offenses."  *United States v. Sumner*, 325 F.3d 884, 889 (7th Cir.) (internal quotations omitted), *cert. denied*, 540 U.S. 897 (2003); U.S.S.G. § 1B1.3(a)(2).  Acts are part of the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a[n] . . . ongoing series of offenses."  U.S.S.G. § 1B1.3(a)(2), cmt. n. 9(B).  A connection can be shown by "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."  *Id.*

In Knox's case, it is clear that all of the relevant conduct for which Knox was held accountable was part of the same course of conduct as the offenses of his conviction, and was thus properly countable as relevant conduct under U.S.S.G. § 1B1.3(a)(2).  The facts set forth in the PSR demonstrate that Knox participated in an ongoing series of crack cocain distribution activities from the summer of 1998 up to his arrest in late 2000 and that the two trips to Chicago about which Plumlee testified fell smack dab in the middle of that series.  The nature of the drug activities for that time period was similar – purchasing ounce amounts of crack cocaine from a

source in Chicago or elsewhere and redistributing in smaller quantities it in southern Illinois. Furthermore, the drug activities occurred on a regular basis;  the PSR recounts statements from witnesses indicating that Knox sold thousands of dollars of crack cocaine in more than a hundred transactions before he was arrested.  Finally, the PSR reveals no significant gap in time between any of Knox's numerous drug-selling activities.  His self-serving statement in the PSR that there were periods in 2000 where he did not use drugs himself is not sufficient to establish that his drug distribution activities stopped enough to interrupt a well-established course of conduct. Knox has not pointed to any additional evidence that Stern could have presented to show that any of the findings set forth in the PSR regarding his drug activities were inaccurate or unreliable or to show that the events in the more than two-year stretch of drug activities recounted in the PSR were not sufficiently connected to be counted as relevant conduct.  If Knox cannot specify what evidence Stern should have but did not present, he cannot prevail in this part of his § 2255 motion.  *See Fuller*, 398 F.3d at 652;  *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003), *cert. denied*, 541 U.S. 1055 (2004).

Furthermore, had Stern pursued the "course of conduct" argument, he risked that the government would call as witnesses others who gave statements for the PSR who might have lifted Knox's relevant conduct above the 500 gram threshold to a base offense level of 36.  At a minimum he risked that the Court would not give Knox the 3-point reduction for accepting responsibility because he made a frivolous argument.  If both of these things happened, Knox's total offense level would have been 38 and his sentencing range would have been 360 months to life imprisonment.[5]  Stern's choice to challenge Plumlee's credibility, a battle that had a greater

---

[5]The Court realizes that the maximum sentence for each count could not have exceeded 240 months without running afoul of the principles announced in *Apprendi*.  However, the Court

chance of succeeding and less risk than a "course of conduct" challenge, was a rational strategic decision well within the bounds of competent performance and did not in any way undermine the fairness of Knox's sentencing.

           b.     <u>Personal Use Amounts</u>

Knox argues that Stern was constitutionally ineffective because he failed to object to the inclusion of personal use drug amounts in the relevant conduct calculation. He points to his own statement in the PSR that he used crack cocaine extensively since at least 1987 and statements from two witnesses that Knox used crack cocaine. He believes that if Stern had argued that some of the drugs Knox purchased from his trips to Chicago were for his personal use and had called Knox to testify in his defense, his relevant conduct would have been substantially lower.

The government argues Stern's decision not to argue personal use amounts was within the bounds of professionally competent assistance because Knox clearly purchased dealer amounts of crack cocaine and had an established crack cocaine distribution business. Furthermore, the government notes that Knox has only provided vague, self-serving statements that a substantial portion of the crack cocaine he purchased was for his personal use.

Nothing Knox alleges in his motion would establish that Stern was constitutionally deficient in his performance or that his case was prejudiced from Stern's failure to make a "personal use" argument. The government does not contest that Knox's personal use amounts should not have counted toward his relevant conduct. Even so, Knox provides nothing but self-

_____

could have ordered the sentences to run consecutively, at least in part, to achieve the guidelines' intended result. *United States v. Hernandez*, 330 F.3d 964, 983 (7th Cir. 2003), *cert. denied*, 541 U.S. 904 (2004); *United States v. Noble*, 299 F.3d 907, 909 (7th Cir. 2002); U.S.S.G. § 5G1.2(d). Thus, Knox's effective range in this worst-case scenario would have been 360 to 720 months.

serving, unsworn statements that those quantities were so substantial that they would have decreased his offense level.  Knox is right that the PSR reveals he used crack cocaine.  However, in order to make a difference in Knox's base offense level, nearly 250 grams of the 396 he purchased in Chicago would have had to have been for his personal use.  Knox has not pointed to any specific evidence that Stern could have presented to convince the Court that the magnitude of Knox's personal use quantities should have decreased his base offense level.  Such evidence is required to withstand denial of a § 2255 motion.  *See Galbraith v. United States*, 313 F.3d 1001, 1008-09 (7th Cir. 2002).  In fact, Knox has not even presented any specific *self-serving, unsworn* statement about what his personal use amounts were.  In the absence of an allegation of what evidence Stern should have presented, Knox cannot show that Stern was deficient.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003), *cert. denied*, 541 U.S. 1055 (2004).

Furthermore, even if Stern had recommended that Knox testify and had actually called him as a witness to his yet unspecified personal use amounts, he would have risked an enhancement for obstruction of justice if the Court had found Knox's testimony not to be credible.  In view of the numerous statements about Knox's substantial drug dealing activities, it is questionable whether the Court would have believed that nearly 250 of the 396-gram purchase was for Knox's personal use.  Had the Court not believed Knox, it could have increased his offense level by two points for obstruction of justice under U.S.S.G. § 3C1.1 and could have refused his three-point reduction for acceptance of responsibility.  Again, the worst-case scenario could have yielded a guideline range of 360 months to life (or an effective range of 360 to 720 months, as noted in footnote 5).  In light of such risks, the failure to advise Knox to testify as to his own drug use was not outside the range of performance of competent counsel.

13

c.      Indictment Quantities:  *Blakely*

Knox faults his counsel for failing to argue that his relevant conduct should be limited to

2.3 grams of crack cocaine[6] involved in the offenses of conviction which would have yielded a

base offense level of 20 and which would have led to a sentencing range much lower than the

one found by the Court.  Knox reiterates this argument in the second amendment to his petition,

citing in support the recent Supreme Court case, *Blakely v. Washington*, 124 S. Ct. 2531 (2004),

and adds that the gun enhancement was also unconstitutional without an admission or jury

finding.

At first blush, Knox's *Blakely* argument has some appeal.  While at the time Knox was

tried the argument would have been soundly rejected, after *Blakely* and *United States v. Booker*,

375 F.3d 508 (7th Cir. 2004), *judgment aff'd & remanded*, 125 S. Ct. 738 (2005), the legal

landscape changed.  *Blakely* applied the principles set forth in *Apprendi v. New Jersey*, 530 U.S.

466 (2000), to a Washington state sentencing scheme similar to the federal sentencing

guidelines.  In *Blakely*, the defendant pled guilty to second-degree kidnaping, a class B felony

that carried a standard sentencing range of 49 to 53 months.  *Blakely*, 124 S. Ct. at 2535.  In

general, class B felonies in Washington could not be punished by prison sentences exceeding ten

years.  *Id.*  The sentencing judge found that aggravating factors existed to justify an exceptional

sentence of 90 months, still well within the permissible class B felony range but also well

beyond the standard range for second-degree kidnaping.  *Id.*  The Supreme Court held, however,

---

[6]Knox admits that the government can prove 1.1 grams of crack and seeks an additional
laboratory analysis that show the government can prove 2.3 grams involved in the counts of
conviction.  However, in a supplemental brief, Knox argues that he should only be sentenced
based on a trace amount of crack cocaine since he did not admit to any specific amounts in his
guilty plea.  The specific amount for which Knox believes he should be held accountable is
immaterial to the Court's rejection of his overall argument.

14

that because the facts to which the defendant pled could only support a standard range sentence, *Apprendi* precluded the judge from making further findings to enhance the sentence, even if the sentence still fell within the class B felony range.  *Id*. at 2537-38.  In essence, the *Blakely* Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely,* 124 S. Ct. at 2537 (emphasis in original).  Therefore, because only the 49 to 53 month range was justified by the defendant's plea and any higher sentence was subject to reversal considering *only the facts admitted in the plea*, the defendant's sentence must fall within that range.  *Id.* at 2538.

In *Booker*, the Court of Appeals for the Seventh Circuit Court of Appeals applied *Blakely* to the federal sentencing guidelines and held that (other than criminal history) only facts proven to a jury beyond a reasonable doubt or admitted by a defendant could be used to calculate a sentence under the guidelines.  *Booker*, 375 F.3d at 510-12.  The Supreme Court ultimately confirmed that *Blakely* applies to the federal sentencing guidelines and that application of the guidelines as written is unconstitutional because of their mandatory nature.  *United States v. Booker*, 125 S. Ct. 738, 746, 749-50 (2005).  However, the Supreme Court held that the proper remedial measure to save the guidelines is not to require that special findings be submitted to a jury.  *Id.* at 759-64.  The proper remedial measure, the Court decided, is to strike the portions of the Sentencing Reform Act of 1984 that make application of the guidelines mandatory as opposed to advisory:  18 U.S.C. §§ 3553(b)(1) and 3742(e).  *Id.* at 764-67.  Those provisions having been stricken from the Sentencing Reform Act, judges, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  *Id.* at 767;  *see* 18 U.S.C. § 3553(a)(4) & (5).

15

The key issue in this part of Knox's § 2255 motion, however, is not whether Knox's sentence would have or could have been any different in a post-*Blakely* and post-*Booker* world. It is whether Stern was constitutionally deficient for failing to anticipate the change in the legal landscape that resulted from *Blakely* and *Booker*.  It is clear that Stern was not deficient for failing to raise a *Blakely/Booker*-like argument at trial.  Although the foundation for such an argument existed at the time, the argument was doomed to fail before the Supreme Court issued *Blakely* and *Booker*.  Counsel cannot be faulted for failing to anticipate the change in the law brought about by *Blakely* and *Booker*.  *See Fuller v. United States*, 398 F.3d 644, 651 n. 4 (7th Cir. 2005);  *United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002).  Because Knox cannot show that Stern was deficient in his performance, the Court will not grant § 2255 relief on this basis.

> d.   Failure to Investigate or Call Lawler

Knox faults Stern for failing to investigate and call Lawler as a witness at his sentencing. He believes that if Lawler had testified, Stern would have been able to discredit Plumlee's testimony about the amount of drugs Knox purchased in Chicago.

The government argues that Stern knew about Lawler and made a strategic decision not to call her.  It further notes that Knox has not shown what the substance of Lawler's testimony would have been, and, if it were the same as her statement to law enforcement, that her testimony would have not aided Knox because it also established his relevant conduct as between 150 and 500 grams of crack.  Thus, Stern's decision not to call her was reasonable and not prejudicial.

The Court agrees that Knox has not alleged anything that would show Stern was deficient in his failure to investigate or call Lawler as a witness.  In fact, the transcript of the sentencing

16

hearing reveals that Stern was well-aware of Lawler's statement contradicting Plumlee's testimony and that he made use of those contradictions in an attempt to discredit Plumlee.

Furthermore, Stern's decision not to call Lawler was a professionally competent decision. First, Knox has not presented any evidence that Lawler would testify any differently than her statement to law enforcement.  He cannot prevail in this § 2255 motion unless he can set forth what testimony Lawler would have given.  *See Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005);  *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 2194 (2004).  Second, even if Lawler had testified consistently with her statement to law enforcement and the Court had believed her, Knox's relevant conduct still would have fallen into the 150 to 500 gram range.  Lawler's testimony pegged Knox with 170.1 grams of crack cocaine from two trips to Chicago.  It also established that she sold 2 packs (approximately 2 grams) of crack cocaine for Knox every day for approximately 2 to 3 months – a total of about 240 grams, calculated conservatively.  Thus, her testimony would not have helped Knox.  Stern's decision not to call her as a witness was reasonable, and his failure to call her did not prejudice Knox's case.

To the extent that Knox faults Stern for failing to challenge the Court's understanding of Lawler's testimony, Knox misunderstands the Court's rationale for finding his relevant conduct. The Court based its relevant conduct finding on three of Knox's trips to Chicago to purchase crack cocaine:  one in 1998 about which Lawler gave a statement (56.7 grams), one in February 1999 about which Lawler gave a statement (113.4 grams) and about which Plumlee testified (170.1 grams), and one several weeks after that about which Plumlee testified (226 grams).  The Court credited Lawler's statement about the 1998 trip and credited Plumlee's testimony about the two 1999 trips, but gave Knox the benefit of the contradiction in the amounts involved in the

17

February 1999 trip.  There was no misunderstanding on the Court's part that Stern could have challenged.

In sum, Knox cannot satisfy either prong of the *Strickland* test with respect to Stern's failure to investigate Lawler or to call her as a witness at Knox's sentencing hearing.  Thus, § 2255 relief is not appropriate for this reason.

e.      Standard of Proof at Sentencing

Knox argues that Stern was deficient because he failed to argue that his sentence based on a relevant conduct finding of 396.9 grams of crack cocaine violated his Fifth Amendment due process rights.  He believes that his counts of conviction involved 2.3 grams of crack cocaine at the most, which would have yielded a base offense level of 20, and that it violated due process to sentence him based on 396.9 grams of crack cocaine, which yielded a base offense level of 34. He believes that Stern should have asked the Court to make its relevant conduct findings using a higher standard of proof that the preponderance of the evidence because those findings "became a tail which wags the dog of the substantive offense."

In response, the government notes that Stern did raise the issue in his objections to the PSR, and the Court rejected it.  The government further argues that although there may be due process concerns in some instances where the preponderance of the evidence standard is used, in this case that was the appropriate standard of proof.

It is true that, although the preponderance of the evidence standard is all that the sentencing guidelines require, in certain cases due process calls for a higher standard of proof, that of clear and convincing evidence.  *See United States v. Johnson*, 342 F.3d 731, 735-36 (7th Cir. 2003);  *United States v. Miner*, 127 F.3d 610, 614 (7th Cir. 1997).  "A higher standard might be called for only in the rare instance where a factual finding will result in a sentencing increase

18

so great that the sentencing hearing can fairly be characterized as a tail which wags the dog of the substantive offense." *Johnson*, 342 F.3d at 735 (internal quotations omitted).  Such a circumstance existed in the Third Circuit case of *United States v. Kikumura*, 918 F.2d 1084 (3d Cir. 1990), in which the Court departed upward from a guidelines sentencing range of 23 to 33 months to impose a sentence of 30 years, and the Court found that the appropriate standard was clear and convincing evidence.  It did not exist, however, in *United States v. Porter*, 23 F.3d 1274, 1277 (7th Cir. 1994), where the defendant was convicted of distributing .55 grams of crack cocaine but was sentenced based on a relevant conduct of 13.6 grams.  In fact, the Seventh Circuit Court of Appeals has held repeatedly that a higher standard is generally not called for in relevant conduct drug determinations.  *Miner*, 127 F.3d at 614 (citing *United States v. Ewers*, 54 F.3d 419 (7th Cir. 1995));  *United States v. Johnson*, 32 F.3d 265, 268 n. 1 (7th Cir. 1994).

Knox's case does not even come close to being the kind of extreme case for which the clear and convincing standard may be required at sentencing.  For this reason, Stern was not deficient for failing to argue more vigorously for the elevated standard of proof, and Knox suffered no prejudice as a result.  In this case, Knox's relevant conduct was not such a vast departure from his offense conduct that the proverbial tail was wagging the dog.  For these reasons, the Court finds that Knox cannot show that Stern was ineffective for failing to request a clear and convincing burden of proof.

### 2.   Gun Enhancement

Knox believes Stern should have argued that, like his 1999 relevant conduct, his acceptance of a gun as payment for crack cocaine in the spring or summer of 2000 was too remote from his offenses of conviction to be used to enhance his sentence under U.S.S.G. §2D1.1(b)(1).  He also argues that Stern should have argued that Taborn's testimony was

19

unreliable and should have investigated and called Taborn's girlfriend Beth as a witness at sentencing.  He also believes Stern should have advised Knox to testify to discredit Taborn.

As for Knox's argument that the gun trade was remote in time to his offense of conviction, the information in the PSR clearly establishes that it occurred during Knox's drug activities that constituted his relevant conduct (*See* Part III.A.1.a of this order).  Thus, it was properly used to enhance Knox's sentence, and Stern was not deficient for failing to object that the conduct was too remote to be counted.

As for Stern's efforts to discredit Taborn, they were vigorous and well within the realm of reasonably competent performance.  Stern valiantly argued that Taborn's lack of first-hand knowledge of the gun-drug transaction rendered him unreliable, but the Court did not accept that argument.  Knox believes Stern should have called Taborn's girlfriend to testify to the transaction, but he does not offer any objective evidence of what Beth would say if called to the stand.  Without citing to what other evidence or argument Stern could have used to discredit Taborn, Knox cannot show that Stern was deficient..  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005);  *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003), *cert. denied*, 541 U.S. 1055 (2004).

To the extent that Knox believes his own testimony would have caused the Court to disbelieve Taborn, the Court notes that Knox never affirmatively states that the transaction did not occur.  Even if he had been prepared to so testify, Stern's advice not to do so was reasonable for the same reasons his advice not to testify about his personal use quantities (*See* Part III.A.1.b of this order).  He risked losing his acceptance of responsibility reduction and risked being saddled with an obstruction of justice enhancement.

20

In sum, Stern's approach to contesting the gun enhancement was not constitutionally deficient, and Knox has not alleged any prejudice from that approach.

### 3.    Other Challenges to PSR

Knox argues that Stern was deficient for failing to object to a number of specific paragraphs of the PSR to preserve those issues for appeal.  The government argues, and the Court agrees, that Stern made sufficient objections to the PSR.  The Court will address each of Knox's alleged deficient objections according to its PSR paragraph number.

¶¶ 10, 11, 19 & 24:  Knox alleges that Troy Ash, Lawler, Taborn and a confidential source lied in their statements in the PSR and that Stern should have called and examined them to discredit them.  Knox has not, however, specified what information Stern could have used to discredit the witnesses.  With respect to Taborn in particular, the Court has address Knox's argument earlier in this order.  In the absence of such specifics, Knox cannot prevail on this argument.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005);  *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003), *cert. denied*, 541 U.S. 1055 (2004).

¶ 13:  Knox also believes Stern should have objected to information in his PSR about the drug activities of Milton Jakes, another drug dealer.  However, Knox has not shown how the inclusion of this supposedly superfluous information in his PSR prejudiced his case or rendered the proceedings unfair, that is, how there is a reasonable probability that in the absence of such information the result of the proceedings would have been different.

¶¶ 16 & 17:  Knox argues that Stern should have phrased his objection to these paragraphs differently and more extensively.  The Court notes that the guns and drugs mentioned in these paragraphs were not used to calculate the defendant's relevant conduct or his sentence enhancement.  Therefore, the Court is hard-pressed to see how objections phrased differently or

more extensively could have had a reasonable probability of changing the results of the proceeding or that the objections, phrased as they were, undermined the fairness of the proceeding.

¶ 19:  Knox's objections to the inclusion in his relevant conduct of drug amounts from his 1998 and 1999 trips to Chicago are addressed in Part III.A.1.a of this order.

¶¶ 24 & 25:  Knox faults Stern with failing to object to the incomplete citation in the Addendum to the PSR to U.S.S.G. § 1B1.3.  However, Stern's failure to object to the abbreviated citation did not prejudice Knox's case because the Court applied the correct guidelines to his sentencing calculation.  To the extent that Knox is arguing that his relevant conduct was not in the same course of conduct as his offense of conviction, that argument is addressed in Part III.A.1.a of this order.  To the extent that Knox believes Stern should have argued that his counts of conviction should have been grouped together, they were so grouped.  Knox's further comments with respect to these paragraphs are nonsensical or unsupported.

In sum, Knox has not alleged any facts or made any arguments showing that Stern was deficient in his objections to the PSR or that any such deficiencies, alone or in combination, prejudiced Knox's case.  For these reasons, § 2255 relief is not warranted on these grounds.

4.   Plea Hearing

a.   Compliance with Rule 11

Knox argues that Stern was deficient for failing to obtain and review the transcript of the plea hearing prior to sentencing.  He believes that had Stern reviewed the hearing, he would have noted that it did not technically comply with Federal Rule of Criminal Procedure 11 in that the Court did not advise Knox of his right to persist in his plea of not guilty, as required by Rule 11(c)(3) (2001), and of the consequences of violating his supervised release after his term of

22

imprisonment is complete, as required by Rule 11(c)(1) (2001).  The Court of Appeals noted this deficiency in Knox's direct appeal of his conviction.

In a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that his counsel's advice leading to the plea was outside the range of professionally competent assistance.  *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970);  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).  To satisfy the second *Strickland* prong, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial.  *Hill*, 474 U.S. at 58;  *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005);  *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).  To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea;  his own self-serving testimony is not enough.  *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)).  In a case like the one at bar, where a petitioner faults his counsel for failing to detect and remedy the error *after* the plea was complete, the petitioner must show that his counsel's review of the plea proceedings was deficient and must present objective evidence that he would have sought to withdraw his plea had he known of the plea hearing errors.

Knox has alleged nothing showing that Stern was deficient or that any deficiency prejudiced his case.  As the Court of Appeals noted, Knox obviously knew of his right to plead not guilty because he "already *had* pleaded not guilty and sought to alter that plea."  *United States v. Knox*, 287 F.3d 667, 670 (7th Cir. 2002).  It is also "likely that Knox knew that bad things (such as a return to prison) lay in store if he failed to abide by the terms of release."  *Id.*

23

Even in his § 2255 motion, Knox does not represent that he did not know those things at the time.  Furthermore, there is no indication anywhere in the record  of Knox's criminal case that if Knox had known these things he would have sought to withdraw his guilty plea.  In the absence of any indication that Knox was ignorant of his rights or that he wanted to withdraw his plea, Stern "had no duty to explore legal theories that might have been put to use in quest of that goal." *Id.* at 672.  Furthermore, as noted earlier, Knox did not indicate in his criminal case, does not indicate in his § 2255 proceedings, and has presented no objective evidence that he would have sought to withdraw his plea had he been aware of the deficiencies in the plea hearing.  He has utterly failed to allege any prejudice from any Rule 11 deficiencies.

Because Knox cannot establish either prong of the *Strickland* test with respect to Stern's failure to detect the errors in his plea hearing, he is not entitled to § 2255 relief on this basis.

> b.   Awareness of Importance of Relevant Conduct

Knox also argues that Howard, his counsel for his plea, was deficient for failing to tell him prior to his plea that his sentence would be based on his relevant conduct as opposed to the amounts directly involved in his offenses of conviction.

As noted above, in order to satisfy the *Strickland* test where there was a guilty plea, a petitioner must show that his counsel's advice leading to the plea was deficient and that there is a reasonable probability that, but for that deficient performance, he would not have pled guilty. *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985).  To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea;  his own self-serving testimony is not enough.  *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)).

Even assuming that Howard did not inform Knox that his sentence would be based on his relevant conduct, Knox cannot establish prejudice.  First, he has offered nothing more than his self-serving statements that he would have chosen to go to trial had he known his relevant conduct would factor into his sentence.  Second, those self-serving statements are patently incredible in light of the actual proceedings.  At his plea hearing, the Court advised Knox that his relevant conduct would be used to calculate his sentence and confirmed that Howard had discussed with him how the sentencing guidelines might apply in his case.  Having been so advised, Knox still chose to plead guilty.  Furthermore, it was apparent at the sentencing proceedings that relevant conduct was to play a role in Knox's sentence, yet Knox does not allege that he ever requested to withdraw his plea.  Thus, there is simply no reason to believe his statement at the present time that had he known what the Court and his counsel informed him of prior to his plea, he would not have pled guilty and would have gone to trial.

Knox has failed to allege any prejudice from any erroneous advice his counsel may have given him prior to trial about the importance of relevant conduct to the length of his sentence.

     5.   <u>Fine</u>

Knox argues that Stern was deficient for failing to challenge the $1,500 fine on the grounds that the Court did not make a complete record of the basis for imposing it.  The government argues that a petitioner cannot challenge a fine in a § 2255 motion.

The government is correct that fines cannot be challenged through § 2255, which is reserved only for challenges to a petitioner's custody, even through the avenue of an alleged ineffective assistance of counsel claim.  *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997).  The Court cannot grant relief in this respect.

6.      Appeal

Knox argues that Stern was deficient for failing to file an appeal or an adequate *Anders* brief on appeal.  In reality, Stern did file a notice of appeal and submitted to the Court of Appeals an *Anders* brief which, if not perfect, was deemed sufficient by a majority of the reviewing panel to justify dismissal of Knox's appeal as frivolous.  *United States v. Knox*, 287 F.3d 667, 672 (7th Cir. 2002).  Stern was not deficient in his performance on appeal, and Knox suffered no prejudice.

7.      Cumulative Error

The Court finds that Knox has not demonstrated a reasonable probability that, but for the foregoing alleged errors by counsel, even if considered in combination, the result of the proceedings would have been different.

For the foregoing reasons, the Court rejects completely Knox's claims that he received ineffective assistance of counsel in this case.

B.      Prosecutorial Misconduct

Knox argues that he is entitled to relief under § 2255 on the grounds that the government allowed the Court to sentence Knox based on inaccurate information.  Knox believes the government improperly offered Plumlee's testimony alone knowing it was false and had an ethical duty to call Lawler as a witness to contradict Plumlee's testimony to ensure that Knox's sentence achieved justice.

The government argues that its calling Plumlee to testify, knowing that her testimony would conflict with a statement given by Lawler, does not amount to prosecutorial misconduct. The government notes that Knox has provided no evidence to show that Plumlee, who the Court

judged to be credible after vigorous cross-examination, was testifying falsely as opposed to Lawler's giving a false statement.

A prosecutor's knowing use of false testimony violates the due process clause. *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001);  *Anderson v. United States*, 403 F.2d 451, 454 (7th Cir. 1968) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  In the context of a trial, "[w]hen the defendant argues that the government allegedly used perjured testimony, to warrant setting the verdict aside and ordering a new trial, the defendant must establish that:  (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury . . . . 'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'"*Shasteen*, 252 F.3d at 933 (quoting *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)).  The test is similar for the government's use of witnesses at other stages of a criminal prosecution.

In this case, Knox has alleged nothing more than mere inconsistencies in testimony by an actual and a potential government witness.  Knox has not alleged anything to establish that Plumlee's testimony was perjurious simply because it conflicted with Lawler's statement, and has certainly not offered any support for his accusation that the government called Plumlee as a witness knowing she would testify falsely.  He has simply alleged nothing amounting to this sort of prosecutorial misconduct.  Furthermore, there is no ethical obligation for the government to call witnesses that will give testimony that conflicts with the testimony of the witnesses they offer.  It is true that they must disclose those witnesses to the defense.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 155 (1972).  However, it is

27

defense counsel's job to call those witnesses if he believes it will benefit his client.  As explained earlier in Part III.A.1.d of this order, Lawler's testimony would not have benefitted Knox.

    C.    *Blakely*

To the extent that Knox attempts to raise a direct challenge based on *Blakely* or *Booker* as opposed to a challenge through the ineffective assistance of counsel avenue, the Court rejects his argument.

Although Knox's *Blakely* argument is timely, he has procedurally defaulted it.  Stern did not argue on direct appeal that a jury must determine beyond a reasonable doubt the quantity of drugs that can be considered as relevant conduct and the gun enhancement.  He certainly could have raised the issue on appeal, for the principles underlying that argument were established in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was decided more than a year prior to Knox's sentencing hearing.  Because he did not raise the argument, he has procedurally defaulted and can only raise the issue now if he can show cause for and prejudice from the failure to raise the issue on direct appeal or if he can show a fundamental miscarriage of justice. He has done neither.  Ineffective assistance of counsel can provide cause for failing to raise an issue on appeal.  *See Franklin v. Gilmore,* 188 F.3d 877, 884 (7th Cir. 1999) (citing *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996) (holding that appellate counsel is ineffective "[o]nly when ignored issues are clearly stronger than those presented")) (§ 2254 context).  However, as explained in Part III.A.1.c of this order, Stern was not ineffective for failing to raise this issue on direct appeal.  Furthermore, to the extent that *Apprendi* principles had not yet been applied to the federal sentencing guidelines, "the novelty of a legal rule is *not* 'cause.'"  *See Garrott v. United States*, 238 F.3d 903, 906 (7th Cir. 2001) (emphasis in original).  In addition, Knox cannot show prejudice because he cannot show that no reasonable jury would have found the drugs ultimately

28

found to be his relevant conduct or would have held him responsible for the gun enhancement. *Id.* For these reasons, the Court finds that Knox has procedurally defaulted on his *Blakely* argument.

Even if he had not procedurally defaulted on this claim, the Court of Appeals for the Seventh Circuit has held that *Booker* is not retroactively applicable on collateral review. *McReynolds v. United States*, 397 F.3d 479, 480-81 (7th Cir.), *cert. denied*, 125 S. Ct. 2559 (2005); *see also Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002) (*Apprendi* does not apply retroactively on collateral review); *Schriro v. Summerlin*, 124 S. Ct. 2519, 2525-26 (2004) (holding that *Ring v. Arizona*, 536 U.S. 584 (2002), which relied on the same principles as *Apprendi*, does not apply retroactively on collateral review). For this reason, it is of no assistance to Knox, and he is not entitled to § 2255 relief on that basis.

D.   Other Arguments

Knox touches on a myriad of other arguments. The Court has reviewed each of them and has found that they are either (1) waived because they were raised for the first time in a reply brief, *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998), (2) unsupported by legal argument, *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000), or (3) have no merit. Thus, they do not warrant § 2255 relief.

IV.   **Miscellaneous Motions**

A.   Motion for Discovery (Doc. 8)

In this motion, Knox asks for discovery in connection with this § 2255 motion. Specifically, he seeks a lab analysis report of the substance sold in one of the transactions for which Knox was convicted. In a § 2255 proceeding, the Court may for good cause authorize a party to conduct discovery. Rules Governing § 2255 Proceedings, Rule 6(a). Knox has not

29

shown good cause for discovery in this case.  The amount of drugs of which Knox was convicted of distributing in each count is immaterial to the outcome of this proceeding because Knox's sentence on each count was within the statutory maximum for distributing even a trace of amount of crack cocaine.  *See* 21 U.S.C. § 841(b)(1)(C).  For this reason, the Court will deny the motion for discovery (Doc. 8)

B.      Motion for Summary Judgment (Doc. 12)

Knox asks the Court to grant him summary judgment in this case.  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  For the reasons set forth in Part III of this order, the Court finds that there is no genuine issue of material fact and that Knox is not entitled to judgment as a matter of law.  Furthermore, the motion for summary judgment is moot in light of the Court's denial of Knox's § 2255 motion.  Accordingly, the Court will deny Knox's motion for summary judgment (Doc. 12).

C.      Motion for Bond (Doc. 18), Motion for Expedited Hearing on Bond (Doc. 22) and
        Motion to Sever (Doc. 23)

In his motion for bond, Knox asks the Court to release him on bond pending the outcome of these § 2255 proceedings and the entry of final judgment in any subsequent criminal proceedings in his criminal case.  "[F]ederal district judges in habeas corpus and section 2255 proceedings have inherent power to admit applicants to bail pending the decision of their cases, but a power to be exercised very sparingly."  *Cherek v. United States*, 767 F.2d 335, 337 (7th

30

Cir. 1985).  Knox asks for an expedited hearing on the issue of bond and asks that it be considered separately from and prior to the merits of his § 2255 motion.

Knox has not alleged anything in his motion for bond that, even if true, would convince the Court that bail would be appropriate in this case.  Thus, there is no need for a hearing, and relief is not warranted.  Furthermore, the motion is moot in light of the Court's resolution of Knox's § 2255 motion in this order.  The Court will therefore deny the motion for bond (Doc. 18), motion for an expedited hearing (Doc. 22) and motion to sever (Doc. 23).

      D.    <u>Motion to Correct Plain Error (Doc. 20) and Motion for Judgment on the Pleadings (Doc. 27)</u>

In these motions, Knox reiterates some of the arguments in the briefing on his § 2255 motion and its amendment.  As Knox has already raised those arguments in an appropriate format to the Court, the Court will deny the motion to correct plain error and motion for judgment on the pleadings as moot (Docs. 20 & 27).

      E.    <u>Motion to Appoint Counsel (Doc. 26)</u>

Knox asks the Court to appoint him counsel for these proceedings.  Whether to appoint an attorney to represent an indigent § 2255 petitioner is within the sound discretion of the district court.  *Winsett v. Washington,* 130 F.3d 269, 281 (7th Cir. 1997).  There is absolutely no right to appointment of counsel case unless the absence of counsel would result in fundamental fairness impinging on due process rights, *Winsett*, 130 F.3d at 281; *see* 18 U.S.C. § 3006A(a)(2)(B) ("Whenever . . . the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section . . . 2255 of title 28.").  Counsel is required to be appointed only "'if, given the difficulty of the case and the litigant's ability, [the petitioner] could not obtain justice without an attorney, [he] could not

31

obtain a lawyer on [his] own, and [he] would have had a reasonable chance of winning with a lawyer at [his] side.'" *Winsett*, 130 F.3d at 281 (quoting *Forbes v. Edgar,* 112 F.3d 262, 264 (7th Cir. 1997)).

In reviewing Knox's § 2255 motion and its amendments, the Court has determined that the interests of justice do not require appointment of counsel for Knox in these proceedings.  The case is not difficult, and Knox has demonstrated his ability to submit logical briefs expressing his legal arguments and their factual basis.  More importantly, the Court finds that Knox would not have a reasonable chance of winning with professional legal assistance.  For these reasons, the Court will deny Knox's motion for appointment of counsel (Doc. 26).

## V.   Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Knox's motion to file a supplemental reply brief (Doc. 30);

- **DENIES** Knox's § 2255 motion and its amendments (Docs. 1, 3 & 15);

- **DENIES** the remainder of Knox's pending motions (Docs. 8, 12, 18, 20, 22, 23, 26 & 27); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  July 13, 2005**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

32